[No. B076330. Second Dist., Div. Four. Mar. 6, 1995.]

ROBYN R. DEVEREAUX, Plaintiff and Appellant, v.
LATHAM & WATKINS et al., Defendants and Respondents.

**COUNSEL**

Robyn R. Devereaux, in pro. per., for Plaintiff and Appellant.

Latham & Watkins, William C. Bottger, Michael J. Bononi, Kathryn M. Dessayer, Eric J. Custer and Michael J. Bononi for Defendants and Respondents.

## Opinion

**WOODS (A. M.), P. J.**—Robyn R. Devereaux (appellant) appeals the dismissal of her action against Latham & Watkins et al. (collectively, respondent or the firm) for her failure to post security as required by Code of Civil Procedure section 391.3.[1]

The instant appeal is only the latest installment in an acrimonious dispute between the law firm of Latham & Watkins and appellant, a one-time litigation paralegal employed by the firm. In their briefs, each side indulges in unnecessary and inflammatory characterizations of the other which we ignore. For our purposes, the salient facts are as follows: From July 1987 to May 1989, appellant was employed by respondent as a litigation paralegal. After she had been terminated, respondent was sued for overbilling by American International Insurance Company of Puerto Rico, Inc. (AIICO) in connection with respondent's representation of AIICO in a case entitled In re San Juan Dupont Plaza Hotel Fire Litigation (the Fire Litigation). AIICO subpoenaed appellant who, by deposition, testified against respondent in the AIICO lawsuit. At that deposition, appellant produced certain documents which she had removed upon her termination from respondent's office, without permission. Respondent, in turn, produced portions of a felony criminal file of appellant which had been sealed by the superior court. Appellant's termination by the firm and the conduct of both parties at her AIICO deposition gave rise to a flurry of litigation.

In Latham & Watkins v. Devereaux (Super. Ct. L.A. County, No. C727627), which the parties refer to as the "Replevin action," the firm sought to recover documents removed from its premises by appellant. The court rendered judgment in respondent's favor, specifically finding that appellant had removed, without authorization, 157 of the firm's documents. In the course of the Replevin action, the trial court also granted respondent's motion for an order declaring appellant a vexatious litigant because "among other things, she failed to appear at seven of her own ex-parte motions and continued eleven others . . . . Within a recent one-week period, [Latham & Watkins'] counsel was required to appear at four noticed hearings, three of which did not take place because defendant Devereaux did not appear."

---

[1]Also named as defendants in appellant's action were Michael John Bononi, Thomas L. Pfister, Milton Allen Miller, Lisa Jean Hansen, Joel E. Krischer, John F. Walker, Linda Sherwood and Kenneth Oder, all of whom are alleged to be partners or employees of Latham & Watkins.

Code of Civil Procedure section 391.3 is part of the vexatious litigant statute. It requires a plaintiff who has been declared a vexatious litigant to furnish security for the benefit of the moving defendant as a prerequisite to maintaining the action.

In Devereaux v. Latham & Watkins (Super. Ct. L.A. County, No. BC018365), and Devereaux v. Latham & Watkins (Super. Ct. L.A. County, No. C756772), a consolidated action, appellant sued respondent for wrongful termination and for sex and handicap discrimination. On the firm's motion, the trial court declared appellant a vexatious litigant and found that she did not have a reasonable probability of prevailing on any of her claims against respondent. Pursuant to Code of Civil Procedure section 391.1, it ordered her to furnish security in the amount of $35,000 to proceed with the litigation. Appellant filed petitions for writs of mandate and prohibition with the Court of Appeal seeking to vacate the order. Her petitions were summarily denied. When she failed to deposit the required security, her action was dismissed.

This brings us to the underlying suit in the instant appeal, a consolidation of two actions, Devereaux v. Latham & Watkins (Super. Ct. L.A. County, 1991, No. BC042291), and Devereaux v. Bononi (Super. Ct. L.A. County, 1993, No. BC042426).

In the first action, filed on May 15, 1991, appellant sought indemnity under Labor Code section 2802 (the Indemnity action) for expenses incurred by her in connection with her depositions in the Fire Litigation and AIICO actions. Labor Code section 2802 requires an employer to indemnify an employee for expenses and losses incurred in the discharging of the employee's duties. In addition to her cause of action under that statute, appellant also alleged causes of action for intentional and negligent infliction of emotional distress and punitive damages.

The second action, filed on January 22, 1993, sought injunctive relief and damages for respondent's allegedly intentional disclosure of appellant's private records and confidential information in violation of Welfare and Institutions Code section 5328 (the Injunction action). That statute limits disclosure of certain specified medical records generated in the course of particular kinds of services for psychiatric or other mental disorders.

Both actions arose from appellant's allegations that she "[blew] the whistle" on respondent firm for "withholding/destruction of evidence and insurance fraud and overbilling . . . ." The expenses for which she sought indemnification in the Indemnity action were incurred by her as a result of having to testify in the AIICO action against respondent and in an earlier deposition in the underlying Fire Litigation. In the Injunction action, appellant sought to enjoin dissemination of documents which were allegedly illegally obtained and distributed by respondent "for the purpose of discrediting [appellant] as a defense to her 'whistleblowing' of their illegal destruction of documents subject to discovery in on-going litigation and their fraudulent overbilling of clients."

On June 29, 1992, respondent filed a motion to require appellant to post security as a prerequisite to maintaining the Indemnity action under Code of Civil Procedure section 391.1. The basis of respondent's motion was that appellant had been declared a vexatious litigant in the Replevin action and that she had no reasonable probability of prevailing.

On September 8, 1992, respondent's motion to require appellant to furnish security was denied without prejudice.

On January 22, 1993, appellant filed the Injunction action, which consolidated by reference the earlier Indemnity action.[2]

On March 2, 1993, respondent filed a second motion for an order requiring appellant to furnish security in the amount of $25,000. Respondent based the amount on its estimate of work already performed in the case, discovery propounded by appellant, and the expenses incurred by the firm in the Replevin action.

On March 17, 1993, the trial court granted the motion requiring appellant to furnish security in the amount of $25,000 and gave her until March 29, 1993, to do so.

On March 29, 1993, appellant's motion for reconsideration of the order was denied. On April 29, 1993, after her failure to comply with the order to post security, her action was dismissed.

This appeal ensued. We affirm.

I

Code of Civil Procedure section 391 defines a vexatious litigant, inter alia, as "a person who . . . [¶] . . . [¶] [h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." (Code Civ. Proc., § 391, subd. (b)(4).)[3] In the instant case, the court below declared appellant a vexatious litigant because she had been previously declared one in the Replevin action. She now maintains

---

[2]Neither the motion to consolidate nor the order granting that motion is part of the record on appeal. Moreover, although the two actions were consolidated, a single complaint was not filed so that the operative complaints are the indemnity complaint filed on November 15, 1991, and injunction complaint filed on January 22, 1993.

[3]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

that the court erred because the Replevin action was not based on substantially similar facts as the consolidated Indemnity/Injunction action involved here. The argument is without merit.

■ Neither party, nor our own research, has disclosed a case that interprets the phrase "substantially similar" in section 391, subdivision (b)(4). It is an elementary rule of statutory interpretation, however, that "[w]here, as here, a word is not defined in a statute, its commonly accepted meaning applies. [Citation.]" (*In re Jose A.* (1992) 5 Cal.App.4th 697, 700 [7 Cal.Rptr.2d 44].) Black's Law Dictionary defines "substantially" in part as "Essentially . . . in the main . . . materially; in a substantial manner." (Black's Law Dict. (5th ed. 1979) p. 1281.) "Similar" is defined in part as "having a general likeness, although allowing for some degree of difference." (*Id.* at p. 1240.) Subdivision (b)(4) is satisfied, therefore, when the proceeding in which the party was declared a vexatious litigant, and the proceeding in which he or she is sought to be declared a vexatious litigant in reliance on the earlier proceeding, arise from essentially the same facts, transaction or occurrence. This can be determined by examination of the factual circumstances that underlie the two proceedings and the pleadings.

■ Applying this principle to the case at hand, we conclude that the Replevin action and the Indemnity/Injunction action are based on substantially similar facts. In the Replevin action, respondent successfully sought to recover documents taken from its premises by appellant. Her Indemnity action sought indemnification for the legal counsel whom she was instructed to bring to the AIICO deposition by the special master presiding over the deposition. The purpose of the order was to prevent her from inadvertently waiving her right against self-incrimination in connection with the documents she removed from respondent's office. In her Injunction action, the documents that appellant alleged were wrongfully disseminated by the firm were filed in the Replevin action. Contrary to appellant's contention, therefore, both the Replevin action and the Indemnity/Injunction action arise from essentially the same factual circumstances triggered by her unauthorized removal of documents from the law firm and her production of them at the AIICO deposition.

Under this analysis, it is of no significance that there are slightly different parties involved in this action as compared to the Replevin action. The statute does not require that the parties be the same, only that the proceedings arise from substantially similar facts.

## II

We next address appellant's claim that the court improperly required her to furnish security under section 391.1, because respondent failed to show that there was no reasonable probability she would prevail in the action.

Section 391.1 provides: "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant." (§ 391.1.)

█ Initially, appellant contends that the order was improper because the court failed to make a formal finding of no reasonable probability. On appeal, of course, we presume the order is correct and we imply such findings as are necessary to support it. (*Schnabel* v. *Superior Court* (1993) 5 Cal.4th 704, 718 [21 Cal.Rptr.2d 200, 854 P.2d 1117]; *Estate of Stevenson* (1992) 11 Cal.App.4th 852, 859 [14 Cal.Rptr.2d 250].) Moreover, the statute does not require formal findings.

█ We next turn to her main contention that respondent failed to carry its burden of showing no reasonable probability. In the recent case of *Hung* v. *Wang* (1992) 8 Cal.App.4th 908 [11 Cal.Rptr.2d 113], this court interpreted the same phrase as it appears in Civil Code section 1714.10, which requires a judicial determination of reasonable probability of success prior to permitting the filing of an action against an attorney based on a claim of civil conspiracy with a client. Noting that the legislative purpose of Civil Code section 1714.10 was to eliminate frivolous allegations of attorney-client conspiracy, we held that reasonable probability of success means that ". . . the proposed conspiracy pleading is legally sufficient and . . . is supported by a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted by the [plaintiff] is credited." (8 Cal.App.4th at p. 931.)

█ Similarly, the legislative purpose behind section 391.1 is also to minimize the number of frivolous filings. (*First Western Development Corp.* v. *Superior Court* (1989) 212 Cal.App.3d 860, 867-868 [261 Cal.Rptr. 116].) Accordingly, we adopt the interpretation given to the phrase "reasonable probability" in Civil Code section 1714.10 for purposes of section 391.1. Thus, to satisfy its burden of showing that the plaintiff has no reasonable

probability of prevailing, the defendant must show that the plaintiff's recovery is foreclosed as a matter of law or that there are insufficient facts to support recovery by the plaintiff on its legal theories, even if all the plaintiff's facts are credited.

■ The parties in this case apparently agree that the reasonable probability issues are primarily legal in nature. In the Indemnity action, the issue is whether, as a matter of law, appellant is entitled to indemnity under Labor Code section 2802. In the Injunction action, the issue is the applicability of Welfare and Institutions Code section 5328. We address the arguments in that order.

## A.

Labor Code section 2802 provides: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful." (Lab. Code, § 2802)

■ "Labor Code section 2802 requires an employer to defend or indemnify an employee who is sued by third persons for conduct in the course and scope of his employment." (*Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 461 [123 Cal.Rptr. 683].) The section "has been interpreted to require employers in general to pay defense costs incurred by employees when defending unfounded third party civil actions challenging the employees' conduct within the course and scope of their employment. . . . This right to indemnity encompasses only the right to indemnity for necessary expenditures. [Citation.]" (*Los Angeles Police Protective League* v. *City of Los Angeles* (1994) 27 Cal.App.4th 168, 177 [32 Cal.Rptr.2d 574], italics omitted.) Analogously, the test of whether an employee's conduct is within the scope of the employment has been defined for purposes of respondeat superior as whether that conduct was so unusual or startling that it would be unfair to include the loss as a cost of the employer's doing business. (*Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619 [124 Cal.Rptr. 143].)

■ ■ Applying these standards to appellant's indemnity claim, we conclude that there is no reasonable probability she would prevail on her indemnity claim.

Labor Code section 2802 requires indemnity for an employee's legal expenses only when the expenses are related to employee conduct within the

course and scope of his or her employment. Appellant does not meet this criteria. As a "whistle blower," appellant took a position in her depositions adverse to the interests of her former employer. Indeed, the reason she incurred the expense of an attorney was to protect her from inadvertently waiving her right against self-incrimination in connection with her unauthorized removal of the firm's documents and her production of them at her AIICO deposition. She could hardly be said, therefore, to have been acting in the scope of her employment.

Finally, it appears from the record that appellant has already been compensated for whatever legitimate expenses she incurred as the result of being deposed. For her deposition in the Fire Litigation, she was reimbursed by AIICO in the amount of $3,337.49. For her deposition in AIICO's action against respondent, her expenses were paid jointly by AIICO and respondent. Her attorney for that deposition billed her $8,600 against an AIICO guarantee to pay up to $10,000 in attorney fees. A second lawyer she consulted waived his fee when he withdrew as her counsel. Therefore, even if appellant was entitled to indemnity from the firm, her expenses have already been reimbursed.[4]

Appellant also asserts that the court below erred by failing to consider respondent's liability on her causes of action for intentional and negligent infliction of emotional distress. These causes of action, however, are based on her indemnity claim and fail without it.

## B.

We next consider whether respondent established that there was no reasonable probability that appellant could prevail in her Injunction action in which she alleged that respondent improperly disseminated personal medical and other confidential information in violation of Welfare and Institutions Code section 5328.

Welfare and Institutions Code section 5328 states in pertinent part: "All information and records obtained in the course of providing services under

---

[4]Appellant contends in her reply brief she is still owed more than $29,000 in out-of-pocket costs for representing herself in the Fire and AIICO Litigations. She bases this on her own interrogatory responses in the instant litigation. The court below apparently disbelieved her assertion. We do not second-guess the court's assessment of the credibility of these interrogatory responses, particularly since, when respondent pressed her for greater specificity, she replied through her then attorney that she did "not recall" the basis for the additional claimed expenses. (*Kelly-Zurian* v. *Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409 [27 Cal.Rptr.2d 457] [reviewing court does not "pass upon the credibility of witnesses[.]"].)

Division 4 (commencing with Section 4000), Division 4.1 (commencing with Section 4400), Division 4.5 (commencing with Section 4500), Division 5 (commencing with Section 5000), Division 6 (commencing with Section 6000), or Division 7 (commencing with Section 7100), to either voluntary or involuntary recipients of services shall be confidential." The section then goes on, however, to set forth the circumstances under which such information may be disclosed, including, "To the courts as necessary to the administration of justice." (Welf. & Inst. Code, § 5328, subd. (f).) ▮▮▮ Welfare and Institutions Code section 5330 authorizes a civil action by a recipient of such services against anyone who has "willfully and knowingly released confidential information" about the plaintiff. (Welf. & Inst. Code, § 5330.) Under the terms of the statute, it is clear that such an action can be maintained only if the confidential records allegedly released pertain to services rendered under division 4, 4.1, 4.5, 5, 6 or 7 of the Welfare and Institutions Code. (*Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594, 601 [162 Cal.Rptr. 724] ["[The] general prohibition extends only to those records specifically described in the statute. [Citation.]"].) Furthermore, contrary to appellant's position, the bar against disclosure is not absolute but is subject to numerous exceptions, including disclosure to the courts. (Welf. & Inst. Code, § 5328, subd. (f).) Finally, nothing in either section 5328 or 5330 purports to affect any other privilege or immunity which might apply to the disclosure of the records specified in section 5328.

▮▮▮ ▮▮▮ In light of these observations, the complaint in appellant's Injunction action is demonstrably devoid of merit. As a threshold defect, although she alleged respondent disclosed her "personal medical information and other confidential information to the public at large," she failed to allege with any specificity the nature of these records so as to bring them within the purview of Welfare and Institutions Code section 5328. It was not until her motion for reconsideration of the order requiring her to furnish security that she specified that the records to which she referred pertained to a criminal case in which she was involved, wherein the records were ordered sealed on April 12, 1990. The order sealing the records does not, however, cite Welfare and Institutions Code section 5328 as its authority, so it was never conclusively established that that section even applies to these records. (*Mavroudis* v. *Superior Court*, *supra*, 102 Cal.App.3d at pp. 601-602.) ▮▮▮ Where there is no showing by the person claiming confidentiality of records under section 5328 that the records were generated in the course of receiving treatment under the statutory sections therein specified, disclosure

is not governed by section 5328. (*Sinacore* v. *Superior Court* (1978) 81 Cal.App.3d 223, 226 [146 Cal.Rptr. 302].)[5]

 Further, despite the expansive nature of appellant's claim that respondent disseminated the confidential records to "the public at large," the only two specific instances of dissemination alleged in her complaint consisted of the filing of the records in superior court by respondent in the course of the Replevin action and the mailing of the records to an unspecified "third party" on February 1, 1991. The record reveals that this third party was appellant's then lawyer, Noel Shipman. Both instances of dissemination of appellant's records during the course of long-standing and acrimonious litigation between these parties arguably fall within the Welfare and Institutions Code section 5328, subdivision (f) exception.

Appellant's response to the application of Welfare and Institutions Code section 5328, subdivision (f) is to claim that the bar against disclosure is absolute. As we have seen, however, the bar is subject to exceptions and appellant is wrong. As to appellant's allegation that respondent stole the records in question, the fact is that the gravamen of her action is not that the records were wrongfully obtained but wrongfully disseminated. This is evidenced by the caption of her complaint which seeks injunctive relief and damages "for intentional *disclosure* of private records and confidential information[.]" (Italics added.) The trial court did not err in finding that there was no reasonable probability that appellant would prevail in the Injunction action.[6]

## III

Prior to filing her indemnity action, appellant filed what amounted to an ex parte application under section 391.7 to proceed with the litigation. That section provides in relevant part that "The presiding judge shall permit the

[5]We are aware that subsequent to the order requiring her to furnish security, appellant filed an amended complaint in the Injunction action. Her amended complaint was not before the court when it issued the order requiring her to furnish security nor did she refer to it in her motion for reconsideration of that order, so we do not consider it either. In this connection, we reject her contention that the court erred by dismissing her action for failure to post security when it had previously granted her leave to amend the Injunction complaint. Appellant did not make this argument to the court below and is precluded from raising the issue for the first time on appeal. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397].)

[6]We have read and considered the cases relied upon by appellant, *People* v. *Gardner* (1984) 151 Cal.App.3d 134 [198 Cal.Rptr. 452], and *Gilbert* v. *Superior Court* (1987) 193 Cal.App.3d 161 [238 Cal.Rptr. 220], and conclude that they are both factually and legally inapposite to the case at hand.

filing of [new] litigation [by one declared a vexatious litigant] only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay." (§ 391.7.) It appears from the record that the application was filed by appellant and approved by the presiding judge on the same day without respondent's having had a chance to file opposition.[7] Appellant now contends that this imprimatur by the presiding judge precluded respondent's later motion to require her to furnish security. We do not agree.

Section 391.1, under which respondent brought its motion, states in pertinent part that in any litigation *"at any time* until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. . . ." (§ 391.1, italics added.) Nothing in section 391.7 precludes a defendant from filing such a motion even if the plaintiff has obtained prefiling approval. Moreover, the fact that the court may find that the litigation has "merit" (e.g., is not frivolous) for purposes of section 391.7 does not preclude a later finding that the plaintiff has no reasonable probability of prevailing as is required under section 391.1. We therefore reject appellant's claim that her prefiling approval precluded respondent from bringing its motion to require her to furnish security.

Equally without merit is appellant's claim that respondent was precluded from bringing the motion to require her to furnish security because its earlier motion for that purpose had been denied without prejudice. As we have observed, section 391.1 permits a motion to be brought at any time prior to final judgment. Additionally, the fact that the denial of the first motion was without prejudice allowed respondent to bring a later motion. (*Chambreau* v. *Coughlan* (1968) 263 Cal.App.2d 712, 718 [69 Cal.Rptr. 783] ["The term 'without prejudice,' . . . means that there is no decision of the controversy on its merits, and leaves the whole subject . . . open to another application . . . . [Citations.]"].) Finally, the second motion involved different circumstances in that it was not made until after appellant had filed the Injunction action, consolidated it with the Indemnity action, and joined additional parties.

Lastly, we reject appellant's contentions that the amount of security required of her, $25,000, was arbitrary and that the court should not have required that amount because she was proceeding in forma pauperis. As to the first contention, we need note only that the amount of security required

---

[7]The application was filed in the court on April 10, 1992, and approved on that day. The proof of service shows it was mailed to Latham & Watkins on April 2, 1992.

was supported by an affidavit from an attorney in respondent's office based on discovery which appellant had filed in the action and her conduct in other litigation with respondent. This evidence is sufficient to support the amount of the security. (*Estate of Ivey* (1994) 22 Cal.App.4th 873, 881 [28 Cal.Rptr.2d 16] ["[O]ur function is limited to determining if there is any substantial evidence to support the trial court's order."].) As to appellant's claim that she is unable to post the security, we need only refer to the vexatious litigant statutes which nowhere require the trial court to take into consideration the plaintiff's means in determining the amount of security to be required. (§ 391 et seq.) Indeed, as respondent points out, the issue was raised in the legislative record but is not reflected in the statutes as enacted. This suggests that the Legislature did not intend for the court to concern itself with this consideration.

The judgment is affirmed. Respondent to have its costs on appeal.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied March 24, 1995, and appellant's petition for review by the Supreme Court was denied June 1, 1995.